

# UNITED STATES DISTRICT COURT

## FOR THE

## EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

GUSTAVIA HOME, LLC

               Plaintiff

v                                     Civil Action No. 516-cv-02823 (BMC)

ROBERT R. RUTTY

               Defendant



-------------------------------------------------------------------X

## OPPOSITION MOTION FOR SUMMARY JUDGMENT

Defendant Robert Rutty hereby files his opposition to the plaintiff's motion for summary judgment stating:

### ISSUE:

1. The issue for the Court is whether a Jury or a reasonable Judge could conclude from evidence adduced that the loan originator was People's Choice Home Loan, Inc., which filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court in the Central District of California, Case No. 07-10765 on March 20, 2007?

2. Whether the Wyoming Secretary of State website, indicates that People's Choice Home Loan Inc., was dissolved as of October 24, 2008?

3. Whether Mortgage Electronic Registration Systems, Inc., (MERS) as the agent had the legal authority to assign the mortgage to NPL Capital, LLC, six years after its principal People's Choice Home Loan Inc., was dissolved?

4. Whether the endorsements on the note are defective because there is no evidence submitted to the Court of the date of physical delivery of the note to Gustavia Home, LLC?

5. Whether Gustavia Homes, LLC is registered with the New York State Department of State, Division of Corporations as required by New York Business Corporation Law § 1312, and paid the required fees and necessary taxes, in order to be eligible to initiate legal action in the State of New York?

6. Whether Gustavia Homes, LLC served the defendant with the 90 day notice required by RPAPL 1304 & RPAPL 1306 before initiating this action?

7. Whether plaintiff's attorney filed a frivolous Certificate of merit with the Court in violation of CPLR 3012-B, with intent to deceive the Court and violated New York Judiciary Law § 487 & 22 NYCRR § 130-1.1, by claiming that their client is the true party in interest?

8. Whether there is no triable issue?

9. If a Jury or a reasonable Judge could reach this conclusion, then the plaintiff's motion for summary judgment should be denied?

## **ARGUMENT**

The foregoing issues have not been adjudicated.

No evidence has yet been presented on the record to contradict defendant's allegations in regard to the foregoing issues.

Defendant has not even began discovery, and intend to retain a Forensic Document Examiner & Handwriting Expert to inspect the Wet ink note pursuant to the U.C.C. Article 3, to determine the following;

   a.   The date the paper for the note was made by its watermarks.

   b.   The date the ink on the note was made.

   c.   To inspect the note for Rutty's fingerprints via the process of Iodine Fuming, &

   d.   To have a Handwriting Expert determine if the signature on the note comports to Rutty's true signature.

   Thus, Summary judgment is not proper where discovery has not yet been completed.


## NEW YORK BUSINESS CORPORATION LAW § 1312 REQUIRES FOREIGN ENTITIES TO BE REGISTERED IN THE STATE OF NEW YORK, IN ORDER TO CONDUCT BUSINESS

According to the New York Department of State, Division of Corporations, Gustavia Home, LLC is not registered in New York State to conduct business.

New York Business Corporation Law § 1312 requires foreign entities to register with the New York State Department of State, Division of Corporations and pay all required fees and necessary taxes before conducting business in the State of New York.

The attorney for Gustavia Home, LLC failed to look into their legal basis before accepting the case and initiating legal action.

New York Business Corporation law § 1312 prohibits lawsuits by foreign Corporations not registered to conduct Business in the State of New York.

Certain organizations formed outside New York may not do business in New York until authorized to do so. Called "Foreign," whether formed in another State of the United States or in another Country, such organizations include for-profit and not-for-profit Corporations, limited liability Companies, and limited partnerships.

The requirement to obtain authority to do business exists to protect domestic organizations from unfair competition and to place domestic and foreign organizations on an equal footing.

"Fairness and justice require that when a foreign Corporation comes into our State to conduct business under similar methods and to the same degree it does in its own State, or as do our domestic Corporations, that such a Corporation should be subject to New York laws and regulations as a recompense for the advantages enjoyed by it." *William L. Bonnell Co. v. Katz*, 23 Misc.2d 1028, 1031, 196 N.Y.S.2d 763, 768 (Sup. Ct. 1960).

Organizations obtain authority to do business in New York by making a filing, an "application for authority," in the Department of State. The effect of an application for authority is twofold: the organization acknowledges that it considers itself to be doing business in the State, and it facilitates legal and administrative proceedings by specifying in the application for authority where and in what manner the organization may be served with process.

4

The application for authority does not subject the foreign organization to any substantive regulation that does not also apply to a foreign organization doing business without authority.

The consequence of doing business without authority is that the organization may not affirmatively use New York Courts until it obtains authority and pays all arrears in fees, penalties, and taxes.

The ability of a State to require a foreign Corporation to apply for authority (or "to take out a license" or "to qualify") traces to *Paul v. Virginia*, 75 U.S. (8 Wall.) 168 (1868). It holds that only natural persons are "citizens" within the meaning of the Privileges and Immunities Clause. U.S. Constitution art. IV, § 2. From this it follows that a State has the power to exclude a foreign Corporation from doing intrastate business within its borders.

The power of New York Courts to subject a foreign Corporation to personal jurisdiction because it is "doing business" in the State derives from case law. Courts continue to exercise the power by virtue of Civil Practice Law and Rules § 301.

In this sense of the term, "a foreign Corporation is amenable to suit in New York Courts if it is 'engaged in a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction'." *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 227 N.E.2d 851, 281 N.Y.S.2d 21 (1967) quoting *Simonson v. International Bank*, 14 N.Y.2d 281, 285, 200 N.E.2d 427, 429, 251 N.Y.S.2d 433, 436 (1964). *See also, Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 77 N.Y.2d 28, 565 N.E.2d 488, 563 N.Y.S.2d 21 (1990).

This test of "doing business" is a simple and pragmatic one, which varies in its application depending on the particular facts of each case. *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 432, 208 N.E.2d 439, 441-2, 260 N.Y.S.2d 625, 629 (1965). *See*, D. Siegel, *New York Practice*, §§ 82, 83.

A Court must be able to say from the facts that the Corporation is present "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917).

### PLAINTIFF FAILED TO COMPLY WITH RPAPL 1304 & RPAPL 1306

Gustavia Home, LLC failed to comply with RPAPL § 1304 & § 1306, as the assignment of mortgage was prepared, backdated, notarized and filed eleven days after the complaint was filed.

RPAPL § 1304 Requires that the lender or assignee send a borrower a mandatory 90 day pre-foreclosure warning notice.

RPAPL §1304 (2) further provides that that such notice must be sent by registered or certified mail, and also by first class mail, to the borrower: "Such notice shall be sent by the lender or mortgage loan servicer to the borrower, by registered or certified mail and also by first class mail to the last known address of the borrower, and if different, to the residence which is the subject of the mortgage."

Gustavia Home, LLC failed to comply with RPAPL § 1304 because the notice sent to Rutty was not mailed to his correct address and the notice was mailed 7 months before the mortgage was assigned to Gustavia Home, LLC.

Gustavia Home, LLC had no interest in the chain of title at the time the 90 day notice and the 30 day notice were served and Gustavia Home, LLC is not the real party interest, as required by Rule 17 (a), of the Federal Rules of Procedure.

In Deutsche Bank National Co. v. Spanos, 102 A.D. 3d 909, 910 (2d Dep't. 2013), the Court explained that RPAL § 1304 applies to any home loan: "RPLAL 1304 currently applies to any home loan, "as defined in RPAL 1304 (5) (a). When the statute was first enacted, it applied only to high cost," "subprime." and "non-traditional" home loans (Aurora Loans Servs., LLC v. Weisblum, 85 AD3d 95, 104 (citing L 2008, ch 472, § 2}).

In 2009, the legislature amended the statute, "effective January 14, 2010, to take its current form, by deleting all references to high cost, subprime, and non-traditional home loans" (Aurora Loan Servs., LLC 85 AD3d at 105 {citing L 2009, ch 507, § 1-a}). Since the instant action was commenced on March 26, 2010, the 90 day notice requirement set forth in the statute is applicable."

When a lender alleges compliance with Section 1304 in its complaint, this can be used against the lender to argue that the lender has conceded that the subject mortgage is a home loan and that Section 1304 is applicable.

As such, Gustavia Home, LLC has failed to satisfy a mandatory condition precedent and the foreclosure is required to be dismissed by operation of law.

RPAPL § 1306, in turn, requires the lender, assignee, or mortgage loan servicer to file notice with the Superintendent of Banks within three days of mailing the notice.

Gustavia Home, LLC foreclosure complaint failed to allege any details about when or how such mailing might have occurred to defendant's correct address and further failed to attach a copy of such notice with proof that it was filed with the Superintendent of Banks within three days of mailing.

The Second Department has held in Aurora Loan Services, LLC v. Weisblum, 85 A.D. 3d 95, 103 (2 Dep't. 2011), that, "Proper service of the RPAPL § 1304 notice containing the statutorily mandated content is a condition precedent to the commencement of the foreclosure action. The plaintiff's failure to show strict compliance requires dismissal."

The Third Department has held that the failure to meet the requirements of 1304 is a defense to a home foreclosure action, but does not deprive the court of subject matter jurisdiction. Pritchard v. Curtis, 101 A.D. 3d 1502 (3d Dep't 2012).


In TD Bank, N.A. v. Leroy, 121 A.D. 3d 1206 (3rd Dep't 2014), the third department dismissed the complaint and denied the plaintiff's motion for summary judgment, holding that the mortgagee failed to comply with the mandatory RPAL § 1304 condition precedent to commencing the foreclosure action. The Bank submitted an affidavit of an assistant vice president who averred that the notice was sent and produced a copy of a letter dated more than 90 days prior to commencement along with a certified mail receipt that contained the defendant's name and address but, as is the case here, the notice did not contain a postmark, or date of mailing. This evidence was insufficient to demonstrate

8

strict compliance with RPAL § 1304 and precluded judgment in the plaintiff's favor. In TD Bank, the Third Department also held that the plaintiff had failed to satisfy the additional statutory condition precedent under RPAL § 1306.

"A Mortgagee's failure to comply with these statutory requirements is not required to be raised as an affirmation defense and may be raised at any time." First Natl. Bank of Chicago v. Silver, 73 A.D. 3d 162, 163 (2d Dep't. 2010) (RPAL 1303).

"Further, a lender cannot rely on a pre-foreclosure letter that it served as an attachment to its complaint because the statute requires that such notice be sent in a separate envelope." See, e.g., Emigrant Mortgage Co. v. Persad, 117 A.D. 3d 676, 677, (2d Dep't. 2014) (discussing "separate envelope" requirement that began in 2010).

Thus, Gustavia Home, LLC could not have served the 90 day notice upon Rutty in a timely manner as the assignment of mortgage to Gustavia Home, LLC was recorded with the Queens County Clerk eleven days after the foreclosure complaint was filed.

Gustavia states in its memorandum of law in support of plaintiff's motion for summary judgment that defendant is not entitled to receive a 90 day notice because the defendant does not reside in the subject property.

However, the affidavit of service indicates that Rutty was served at the subject property.

9

Therefore, the 30 day notice required by the mortgage contract and further required by federal law was not served upon Rutty.


## THE CERTIFICATE OF MERIT IS DEFECTIVE

The Certificate of merit states in paragraph No. 2 & 3, "On May 13, 2016, my firm communicated with the following representative or representatives of plaintiff, who informed that he (a) personally reviewed plaintiff's documents and records relating to this case for factual accuracy; and (b) confirmed the factual accuracy of the allegations set forth in the complaint and any supporting affidavits or affirmations filed with the court, as well as the accuracy of the notarizations contained in the supporting documents filed therewith:

Name: Jared Dotoli   Title: Manager

Based upon my communication with Jared Dotoli, as well as upon my own inspection, review and other reasonable inquiry under the circumstances, including, but not limited to the review of the facts of the case as well as of the underlying note, mortgage and assignments, if any, modification (s), if any and extensions and consolidations, if any, I affirm that, to the best of my knowledge, information, and belief, there is a reasonable basis for the commencement of the within foreclosure action and that plaintiff is currently the creditor entitled to enforce the rights of said documents noted above. A copy of the note, mortgage and assignments, if any, modification(s), if any and extension and consolidations, if any, are annexed hereto."

The assignment of mortgage from NPL Capital, LLC to Gustavia Home, LLC was prepared on June 13, 2016, backdated to March 28, 2016 according to the ACRIS Records, notarized in Stone County Missouri then filed with the Queens County on June 13, 2016 at 5.00 p.m.

Toni Eutsler violated New York Executive § 135-a, when the notary backdated the stamp to make it appear that the assignment of mortgage was notarized on March 28, 2016.

Therefore, the Certificate of merit is frivolous because Gustavia Home, LLC had no interest in the chain of title on the date of the alleged communication between Janet Nina Esagoff and Jared Dotoli.

## <u>THE ASSIGNMENT OF MORTGAGE IS DEFECTIVE</u>

The first assignment of mortgage was prepared on May 27, 2016, backdated to March 28, 2016 in an attempt to transfer the security instrument from NPL Capital, LLC to Gustavia Home, LLC, executed by Ashley Warren and notarized in Stone County Missouri in violation of New York Executive Law § 135-a.

The assignment of mortgage was offered for recording with the Queens County clerk on June 13, 2016 at 5.00 p.m. with City Register file No. 2016000199367.

**Exhibit A.** Assignment of mortgage prepared on May 27, 2016 from NPL Capital, LLC to Gustavia Home, LLC with City Register file No. 2016000199367 on June 13, 2016.

11

This assignment of mortgage is defective because NPL Capital, LLC has no prior interest in the chain of title at the time the assignment of mortgage was executed.

Therefore, NPL Capital, LLC could not assign what it did not own and the frivolous assignment has impaired the vendibility of defendant's title

The second assignment of mortgage is from MERS as nominee for People's Choice Home Loan, Inc., to NPL Capital, LLC, which was prepared on June 13, 2016 according to Acris records, backdated to March 11, 2016, signed by Barbara Engle as an officer of MERS without a title, notarized by Charlotte Benedict with a Colorado stamp and offered for recording with the Queens County clerk on June 13, 2016 at 5.00 p.m. in violation of the New York penal law 175.35.

**Exhibit B.** Assignment of mortgage executed by Barbara Engle without a title, from MERS to NPL Capital, LLC, with City Register No. 2016000199368.

This assignment of mortgage is defective because there is no evidence of who gave Barbara Engle the authority to execute the assignment of mortgage.

Further, the prior assignment states that NPL Capital, LLC assigned the security instrument to Gustavia Home, LLC.

Engle appears to be an officer of MERS but because no title is listed on the assignment of mortgage the assignment is therefore defective as there is no indication who gave Engle the legal authority to execute the assignment of mortgage.

12

The loan originator People Choice Home Loan Inc., is suspended from conducting business in New York State and when Rutty checked with the NYS Department of State, Division of Corporations, the record shows that People's Choice Home Loan, Inc., is a Wyoming based Corporation.

**Exhibit C.** NYS Department of State, Division of Corporations record for the loan Originator People's Choice Home Loan, Inc.

On March 20, 2007 People's Choice Home Loan, Inc., filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court in the Central District of California, Case No. 07-10765.

Rutty checked with the Wyoming Secretary of State and found that People's Choice Home Loan, Inc., was dissolved and became inactive on October 24, 2008.

**Exhibit D**. Wyoming Secretary of State Records for People's Choice Home Loan Inc., showing that the entity was dissolved and became inactive as of October 24, 2008.

Therefore, MERS as the agent had no legal authority to assign the mortgage on behalf of its principal People's Choice Home Loan, Inc., after its principal People's Choice Home Loan, Inc., was dissolved and ceased to exist.

Barbara Engle had no legal authority to execute the assignment of mortgage as an officer of MERS and that's why her alleged title was left out.


Defendant is demanding to see the following to determine Engle's authority;

a. Barbara Engle's resume going back 5 years before she executed the assignment of mortgage as required by New York Courts for all alleged robo signer.

b. Engle's payroll records from MERS to prove her employment status with MERS.

c. A Resolution from the MERS Board of the Directors appointing Barbara Engle as an authorized signator.

d. The power of attorney from People's Choice Home loan Inc., to MERS to act as its agent.


The final assignment of mortgage was prepared on June 13, 2016 according to Acris records, backdated to March 28, 2016, executed and backdated with a notary stamp from the State of Missouri to March 28, 2016 and filed with the Queens county clerk on June 13, 2016 at 5.00 p.m. with the City Register No. 2016000199369 in violation of New York penal law 175.35 (offering a false instrument for recording).


**Exhibit E**. Assignment of mortgage prepared on June 13, 2016, backdated and notarized with the date of March 28, 2016 with a Missouri notary stamp and recorded on June 13, 2016 at 5.00 p.m. which is 11 days after the complaint was filed.

The assignment of mortgage offered to the Court to prove ownership of the Security instrument is defective and void and cannot be used to claim ownership of the security instrumenmt.

On a motion for summary judgment, the proponent "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case". Winegrad v. New York Univ. Med. Center, 64 NY2d 851, 852 (1985).

## THERE IS NO EVIDENCE OF THE DATE OF PHYSICAL DELIVERY OF THE NOTE TO PLAINTIFF GUSTAVIA HOME, LLC

There are several undated endorsements on the note and there is no evidence submitted to the Court of the date of physical delivery of the note to plaintiff.

**Exhibit F.** Note with undated endorsements and allonges.

"Again, here, there is no evidence that it took physical delivery of the note and mortgage before commencing this action, and again, the written assignment was signed after the defendant was served. The assignment's language purporting to give it retroactive effect, absent a prior or contemporary delivery of the note and mortgage, is insufficient to grant it standing." Deutsche Bank Trust Company Americas v. Peabody, 866 N.Y.S. 2d 91 (N.Y. Sup. Ct. 2008).

"Actual possession of what appears to be a properly indorsed note creates a rebuttable presumption of ownership and control of the debt that can be undone with an evidentiary showing by the challenger to the holder status. The production of the note establishes his prima facie against the makers and he may rest there. It is for the defendant to set up and prove the facts which limit or challenge the plaintiff's rights". Bridgeport Harbor Place I v. Ganim, 303 Conn. 224, 232 (2011);

"However, the documentation submitted failed to establish that, prior to commencement of the action, the plaintiff was the holder or assignee of both the note and mortgage. The plaintiff submitted copies of two different versions of an undated allonge which was purportedly affixed to the original to the original note pursuant to UCC3-202 (2). Moreover, these allonges purporting to endorse the note from First Franklin, a Division of National City Bank of Indiana (hereinafter Franklin of Indiana) to the plaintiff conflict with the copy of the note submitted, which contains undated endorsements from Franklin of Indiana to First Franklin Financial Corporation (hereinafter Franklin Financial), then from Franklin Financial in Blank. The plaintiff also failed to establish that the note was physically delivered to it prior to the commencement of this action. Summary judgment of foreclosure in favor of Bank reversed". Deutsche Bank National Trust Company v. Barnett, 88 A.D. 3d 636, 931 N.Y.S. 2d 630.

Because the endorsements on the note are undated, there is no evidence of the date of physical delivery of the note to the plaintiff.

The first undated endorsement on the allonge to the note is from People's Choice Home Loan, Inc., to Residential Funding, LLC and the note was indorsed by Dana Lantry purporting to be assistant vice president of People's Choice Home Loan, Inc.

16

However, Dana Lantry executed an assignment of Deed of Trust on February 24, 2004 for a property located in Desoto County, Mississippi, but the signature on the allonge to the note fails to comport to the signature on the assignment of Deed of Trust.

**Exhibit G**. Assignment of Deed of Trust for property located in Desoto County, Mississippi and executed by Dana Lantry.

The assignment of Deed of Trust was offered for recording and returned to DOCX, LLC at 1111 Alderman Drive, Suite 350, Alpharetta, GA 30005.

On November 20, 2012 the Department of Justice put out a press release stating that Lorraine Brown of DOCX and lender processing service entered a guilty plea and admits role in mortgage related document fraud scheme.

**Exhibit H**. Former executive admits role in mortgage related document fraud scheme.

The second paragraph of the press release states, "The guilty plea of Lorraine Brown, 56, of Alpharetta, GA, was announced by assistant attorney General Lanny A. Breuer of the Justice Department's Criminal Division; U.S. attorney for the Middle District of Florida Robert E. Neil; and Michael Steinbach, special agent in charge of the FBI's Jacksonville field office."

The fourth paragraph of the press release states, "Lorraine Brown participated in a scheme to fabricate mortgage-related documents at the height of the financial crisis, said attorney General Breuer. She was responsible for more than a million fraudulent documents entering the system, directing company employees to forge and falsify documents relied on by property recorders, title insurers and others. Approximately, she now faces the prospect of prison time."

The last paragraph of page one the press release states, "Brown was the Chief Executive of DOCX LLC, which was involved in the preparation and recordation of mortgage-related documents throughout the Country since the 1990s. DOCX was acquired by an LPS predecessor company, and was part of LPS's business when LPS was formed as a stand –alone company in 2008. At that time, DOCX was rebranded as LPS Document solutions, a Division of LPS. Brown was president and senior managing Director of LPS Document solutions, which constituted DOCX's operations

DOCX's main clients were residential mortgage servicers, which typically undertake certain actions for the owners of mortgage backed promissory notes. Servicers hired DOCX to, among other things, assist in creating and executing mortgage related documents filed with recorders offices."

In addition, the foreclosure complaint never alleged that the note was assigned to the plaintiff.

The complaint never plead that the plaintiff owns the note.

"The law is that the plaintiff must plead and prove it owns the note and mortgage and that it has the right to foreclose". Wells Fargo Bank, N.A. v. Erobobo et al, 2013 N.Y. Misc. Lexis 1790, 2013 NY Slip Op 50675 (U) (Kings Sup. Ct, April 29, 2013); Wells Fargo Bank, N.A., 80 AD3d 753, 915 N.Y.S. 2d 560 (2d Dep't 2011); Argent Mtge. Co., LLC v. Mentesana, 79 AD3d 1079, 915 N.Y.S. 2d 591 (2d Dep't 2010): Campaign v. Barba, 23 AD3d 327, 805 NYS2d 86 (2nd Dep't 2005).

The complaint of Gustavia Home, LLC never plead that the plaintiff owns the note, never plead the note was assigned but only pleads that there was an assignment of mortgage.

Without pleading ownership of the note, the complaint fails.

"There is a difference between the capacity to sue which gives the right to come into court, and possession of a cause of action which gives the right to relief". Kittinger v. Churcill Evangelistic Ass'n Inc., 239 AD 253, 267 NYS 719 (4th Dep't 1933).

"Incapacity to sue is not the same as insufficiency of facts to sue upon". Ward v. Petri, 157 NY3d 301 (1898)

Thus, plaintiff is not the Boss of the note, or the Boss servant, there is no evidence submitted to the Court of the date of physical delivery of the note to plaintiff and the loan originator People's Choice Home Loan, Inc., was dissolved on October 24, 2008.

If the party bringing the action is not the real party in interest, there can be no default.

"The purpose of the possession requirement in article 3 of the U.C.C., is to protect the debtor from multiple enforcement claims to the same note". Marks v. Branstein, No. 09-11402-NMG (U.S. D. Ct D. MA 2010) and also, In Re Kemp, No. 08-18700-JHW (Bankr. D. NJ 2010). Here, possession refers to physical possession of the note with all of the markings and attachments to it, as contrasted with what someone says is a copy of the physical note.

Part (C) of U.C.C. § 3-203, Transfer of instrument: rights acquired by transfer, provides that even a person in possession of the note cannot enforce it if the note was not properly indorsed and delivered to that person.

Part (D) of U.C.C. § 3-203, Transfer of instrument; rights acquired by transfer, attempts to eliminate risks of multiple claimants under the same note by providing that a possessor of the note who did not acquire 100% of all rights and entitlements under the note is a transferee who

obtains no rights. That is, only the one Boss of the note can direct enforcement of the note, and there can only be one true Boss.

Part (B) of U.C.C. § 3-309, Enforcement of lost, destroyed, or stolen instrument, provides in relevant part that, "The Court may not enter judgment in favor of the person seeking enforcement of a lost, destroyed, or stolen note, unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument.

However, U.C.C. § 3-501 (a) states that only the one entitled to enforce the note or its servant may make demands for payment. § 3-501 (b) (2) states that, upon request, whoever is making the demand must exhibit the note, identify itself, and if alleging to represent the Boss, then prove its authority to be the servant. The borrower is given the right to make these demands for his or her own protection.

The right to enforce the note requires strict compliance with the U.C.C. in order to achieve the protective policies under the Uniform Commercial Code.

Adams v. Madison Realty & Development, Inc., 853 F. 2d 163 (3rd Cir. 1988). This decision notes that strict compliance with the U.C.C. protects each intended owner of the note as it gets passed about.

Cogswell v. CitiFinancial Mortgage, 624 F. 3d 395 (U.S. Cir. 7th 2010): "Ruling against the foreclosure machine, the Court raised the concern that the machine's failure to prove compliance with the U.C.C. requirements created a reasonable concern about whether the note was actually held by another who would be entitled to enforce it against the property owners.

Norwood v. Chase Home Finance, No. A-09-CA-940-JRN (U.S. D. Ct. W.D. TX 2011): The rationale for the strict requirement of possession of the physical note is to protect the obligor from being subject to multiple demands for payment on a single note without procedural safeguards, multiple parties could force the debtor to pay the note. If the original note is a prerequisite for enforcement, however, then a later party faces a significant hurdle before it may enforce the note.

"MERS was never the holder of the note and, therefore, was without authority to assign the note". HSBC Bank USA v. Roumiantseva, Case No. 2013-09197, decided on July 29, 2015.

Gustavia Home, LLC is not the creditor at all, and has shown no colorable claim to the note that would give it Prudential standing to qualify as a real party in interest according to rule 17 (a) (1) of the Federal Practice and Procedure.

Through the use of fabricated assignments, endorsements and affidavits that purport to transfer the mortgage, note and the rights to all monies due under the terms of non-negotiable promissory note, plaintiff has demonstrated a pattern and practice of playing hide and seek with the property owner and the Court.

Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W. 3d 619, 623-24 (Mo. App. 2009), "Holding MERS lacked authority to make a valid assignment of the note".

Bandrup v. Recontrust Co., 353 Or. 668, 303 P. 3d 301 (2013), "MERS was not the beneficiary under plaintiff's Deed of Trust, because it is neither the lender nor the lender's successor in interest".

21

CPT Asset Backed Certificates, Series 2004-EC1 v. Cin Kham (Okla. 2012) 278 P. 3d 586, 592-93, "Holding that the putative noteholder lacked standing to foreclosure because MERS lacked authority to assign the note, though it arguably had authority to assign the mortgage".

Plaintiff's attorney took a frivolous position and deceived the court by failing to make a reasonable inquiry into facts which later proved false.

Plaintiff's attorney had the intent to deceive the Court and violated New York Judicial Law Section 487.

"Fraud on the Court, either as an independent action, or because there are no formal requirements for asserting a claim of fraud on the court, as a pleading invoking the court's inherent power to grant relief for fraud upon the court". Wright and Miller, 11 Fed. Prac. and Proc. § 2868 (3d Ed.)

Moreover, "Because a Court's power to set aside a judgment for fraud on the court arises from the long recognized historic power in equity to set aside fraudulent begotten judgments, the substance of a party's filing related to fraud on the court controls over its form". Hazel-Atlas, 332 U.S. at 245; U.S. v. Buck, 281 F. 3d 1336, 1342 (10th Cir. 2002).

The Supreme Court has held that dismissal of the plaintiff's case is appropriate, and indeed necessary, when the plaintiff commits fraud upon the court. See Hazel-Atlas, 322 U.S. at 250, stating that, "The total effect of all this fraud by plaintiff, calls for nothing less than a complete denial of relief". See also Chambers, 501 U.S. at 44-45. "Outright dismissal of a lawsuit, is a particularly severe sanction, yet it is within the court's discretion".

The Ninth Circuit has also stated that, "Courts have inherent power to dismiss an action when a party has willfully deceived the Court and engaged in conduct utterly inconsistent with the orderly administration of justice". Wyle v. R.J. Reynolds Indus, Inc., 709 F. 2d 585, 589 (9th Cir. 1989) (dismissing district court's dismissal of a complaint as a sanction for plaintiff's numerous knowingly false statements and failure to comply with court's discovery orders).

Similarly, other circuit Courts have observed that a "Federal District Judge can order dismissal or default where a litigant has stooped to the level of fraud on the Court". Aoude v. Mobil Oil Corp, 892 F. 2d 1115, 1119 (1st Cir. 1989).

Plaintiff use manufactured documents that were fabricated with the intent to create the illusion of a valid transfer to support the assertion of standing in Court.

An attorney or counselor who is guilty of any deceit or collusion, or consents to any deceit or collusion, with the intent to deceive the Court or any party, is guilty of a misdemeanor, and in addition to the punishment prescribed therefore by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action. (N.Y. JUD § 487 (2009).

The Second Circuit posed two questions: (1) Whether Section 487 applies when an attorney tries to deceive a Court but fails; and (2) whether the costs of defending litigation instituted by a complaint containing a material misrepresentation of fact should be treated as the proximate result of the misrepresentation even if the Court was not deceived. Amalfitano v. Rosenberg, 533 F. 3d 117, 126 (2nd Cir. 2008).

The plaintiff submitted forged documents to the Court, in order to induce the court to rule in its favor.

The inducing documents utilize by Gustavia Home, LLC and its attorneys induce the Court to grant motions and attorney fees under false pretenses.

Summary judgment is not proper when there is a triable issue.

Summary judgment should not be granted until the facts have been sufficiently developed to enable the Court to be reasonable certain that there is no genuine issue of material fact.

Summary judgment is not proper when the plaintiff's attorney filed a frivolous Certificate of merit with the court.

Summary judgment is a reversible error when the plaintiff lacks standing.

 MERS did not have an interest in the promissory note; and it has never had such an interest. Further, MERS does not lend money or collect on the notes secured by mortgages for which it is named as mortgagee.

Federal Courts, applying state law, have reached similarly disparate results. Compare, e.g., Montgomery Cnty., Pa. v. MERSCORP, Inc. 904 F. Supp. 2d 436, 441 (E.D. Pa. 2012) (applying Pennsylvania law and holding that the County's allegations that MERS violated recording statues by failing to record assignments stated a claim for relief), In re Thomas, 447 B.R. 402, 412 ( Bankr. D. Mass. 2011)  (applying Massachusetts law and holding that " [W]hile the assignment purports to assign both the mortgage and the note, MERS…was never the holder of the note, and therefore lacked the right to assign it…. MERS is never the owner of the obligation secured by the mortgage for which it is the mortgagee of record"), and In re Wilhelm, 407 B.R. 392, 404 (Bankr. D. Idaho 2009) (applying Idaho law and holding that MERS is not authorized "either expressly or by implication" to transfer notes as the "nominal beneficiary' of the lender),

DeFranceschi v. Wells Fargo Bank, N.A. 837 F. Supp 2d 616, 623 (N.D. Tex, 2011) (granting summary judgment to defendants on plaintiffs' claims that assignments by MERS were invalid and rendered foreclosure defective.

Not only are there substantive deficiencies with the assignment of mortgage offered by plaintiff to prove ownership of the security instrument, but plaintiff failed to produce a resolution from the MERS Board of Directors, appointing Barbara Engle as an authorized signator of MERS.

On July 29, 2015 the Supreme Court, Appellate Division, Second Judicial Department ruled in HSBC Bank USA, National Association v. Svetlana Roumiantseva, Case No. 2013-09197 stating, "MERS was never the holder of the note and, therefore, was without authority to assign the note. As a result, the defendants demonstrated, prima facie, that the plaintiff's purported basis for standing was not valid".

## CONCLUSION

Discovery in these proceedings is not yet completed.

Justiciable issues of fact have been asserted by defendant.

Plaintiff's lawyers are acting under fictitious powers from fabricated documents.

Barbara Engle executed a forged instrument in violation of New York penal law 210.45 when she made a false written statement on the assignment, further violated New York Penal Law 170.15 (Falsification of Business records), which was then offered for recording with the Queens County Clerk in violation of New York Penal law 175.35 (offering a false instrument for filing).

Even if MERS had authority to assign the mortgage, MERS was never the holder of the note and, therefore, was without authority to assign the note.

25

The record shows that the plaintiff and or its attorneys either knew who, or set into motion the actions, whereby documents were manufactured for the purposes of litigation, in order to get standing in the Courts.

**WHEREFORE** defendant Rutty move this Honorable Court to deny Plaintiff's motion for summary judgment because the record shows that plaintiff and or its attorneys manufactured document for the purposes of litigation with intent to deceive the Court in violation of New York Judiciary Law § 487, in order to get standing in the Courts, refer the matter to United States District attorney for an investigation as required by title 18 U.S.C. § 4, and grant such further relief as the Court may deem reasonable and just and proper under the circumstance.

Dated: October 6, 2016                                  Respectfully Submitted

Robert Rutty

Pro Se Defendant

2622 North Augusta Drive

Wadsworth, IL 60083

917-683-0155

ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

GUSTAVIA HOME LLC

Plaintiff,                                    Affirmation of Service

-against-

ROBERT R. RUTTY                    16 CV 02823 (BMC)

Defendant.

———————————————————— x

I, ROBERT R. RUTTY , declare under penalty of perjury that I have

served a copy of the attached OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT

upon THE MARGOLIN AND WEINRUB LAW GROUP, LLP.

whose address is: 165 EILEEN WAY, SUITE 101

SYOSSET, NY 11791

Dated: 10/7/16
, New York
IL

RECEIVED
OCT 13 2016
PRO SE OFFICE

Signature
2622 NORTH AUGUSTA DR.
Address
WADSWORTH IL 60083
City, State, Zip Code

# EXHIBIT A



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2016052700119001001EC7A5

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 2 |
|---|---|

| Document ID: **2016052700119001** | Document Date: 03-28-2016 | Preparation Date: 05-27-2016 |
|---|---|---|
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 1 | | |

**PRESENTER:**
REDVISION (PICK UP)
16 COURT STREET SUITE 714
PARTNERS (200237-Q)
BROOKLYN, NY 11241
347-296-0070
KAVITA.JURAKAN@REDVISION.COM

**RETURN TO:**
NPL CAPITAL, LLC
P.O. BOX 458
KIMBERLING CITY, MO 65686

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 13030 | 11 | Entire Lot | 217-03 137TH  ROAD |

Property Type: DWELLING ONLY - 2 FAMILY

**CROSS REFERENCE DATA**

CRFN:   2006000606163

**PARTIES**

**ASSIGNOR/OLD LENDER:**
NPL CAPITAL, LLC
228 PARK AVE S. #28282
NEW YORK, NY 10003

**ASSIGNEE/NEW LENDER:**
GUSTAVIA HOME, LLC
104 SE 8TH AVE
FORT LAUDERDALE, FL 33301

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          06-13-2016 17:00
City Register File No.(CRFN):
**2016000199367**

*City Register Official Signature*

Recording Requested By:
RICHMOND MONROE GROUP

When Recorded Return To:

NPL CAPITAL, LLC
P.O. BOX 458
KIMBERLING CITY, MO  65686

## CORPORATE ASSIGNMENT OF MORTGAGE

Queens, New York   REFERENCE #: 9004178-8   "RUTTY"
INVESTOR #:
Assignment Prepared on: March 28th, 2016.

Assignor: NPL CAPITAL, LLC. at 228 Park Ave S. #28282, New York, NY 10003.
Assignee: GUSTAVIA HOME, LLC  at  104 SE 8TH AVE, FORT LAUDERDALE, FL  33301.

Executed By: ROBERT R. RUTTY  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE
FOR PEOPLE'S CHOICE HOME LOAN, INC., ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 09/29/2006 Recorded:  10/31/2006  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.:
2006000806163 in Queens County , State of New York.

- Assigned Wholly by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PEOPLE'S
CHOICE HOME LOAN, INC., ITS SUCCESSORS AND ASSIGNS  TO NPL CAPITAL, LLC  Dated: 03/11/2016
Document to be recorded concurrently herewith

District/Section/Block/Lot: -13030-11

Property Address:  217-03 137TH ROAD, SPRINGFIELD GARDENS, NY 11413

   This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having
an original principal sum of $134,000.00 with interest, secured thereby, together with all moneys now owing or that
may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants
and provises therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the
Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee forever, subject
to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the
day and year first above written:

NPL CAPITAL, LLC.
On March 28th, 2016

By: _____
Ashley Warren, Assistant Vice-President


STATE OF MISSOURI
COUNTY OF STONE

On March 28th, 2016, before me, TONI EUTSLER, a Notary Public in and for STONE in the State of MISSOURI,
personally appeared Ashley Warren, Assistant Vice-President, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and
acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the
instrument the person, or the entity upon behalf of which the person acted, executed the instrument, and that such
individuals(s) made such appearance before the undersigned in the County of STONE, State of MISSOURI

WITNESS my hand and official seal,

_____
TONI EUTSLER
Notary Expires: 02/24/2018  #14933852
Stone, Missouri
(This area for notarial seal)

TONI EUTSLER
My Commission Expires
February 24, 2018
Stone County
Commission #14933852

# EXHIBIT B



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2016052700119002003EA7E0

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

| Document ID: **2016052700119002** | Document Date: **03-11-2016** | Preparation Date: **06-13-2016** |
|---|---|---|

Document Type: **ASSIGNMENT, MORTGAGE**
Document Page Count: **2**

| PRESENTER: | RETURN TO: |
|---|---|
| REDVISION (PICK UP)<br>16 COURT STREET SUITE 714<br>PARTNERS (200237-Q)<br>BROOKLYN, NY 11241<br>347-296-0070<br>KAVITA.JURAKAN@REDVISION.COM | REDVISION (PICK UP)<br>16 COURT STREET SUITE 714<br>PARTNERS (200237-Q)<br>BROOKLYN, NY 11241<br>347-296-0070<br>KAVITA.JURAKAN@REDVISION.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 13030 | 11 | Entire Lot | 217-03 137TH ROAD |

Property Type: **DWELLING ONLY - 2 FAMILY**

### CROSS REFERENCE DATA

CRFN: 2006000606163

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br>1901 EAST VOORHEES STREET SUITE C<br>DANVILLE, IL 61834 | NPL CAPITAL, LLC<br>228 PARK AVE S,#28282<br>NEW YORK, NY 10003 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 47.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          06-13-2016 17:00
City Register File No.(CRFN):
**2016000199368**

*Jannette M. Fill*
*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2016052700119002003CA560

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 4 |
|---|---|

**Document ID: 2016052700119002**    Document Date: 03-11-2016    Preparation Date: 06-13-2016
Document Type: ASSIGNMENT, MORTGAGE

---

**PARTIES**

**ASSIGNOR/OLD LENDER:**
PEOPLE'S CHOICE HOME LOAN, INC
1901 EAST VOORHEES STREET SUITE C
DANVILLE, IL 61834

Recording Requested By:

When Recorded Return To:

_____

## CORPORATE ASSIGNMENT OF MORTGAGE

Queens, New York  REFERENCE #: 9004178   *RUTTY*
INVESTOR #:
MERS #: 1002733000103720421 VRU #: 1-888-679-6377

Assignment Prepared on: March 11, 2016.

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS NOMINEE FOR PEOPLE'S CHOICE HOME LOAN, INC., ITS SUCCESSORS AND ASSIGNS at 1901 VOORHEES STREET, SUITE C, DANVILLE, IL 61834, P.O. BOX 2026, FLINT, MI 48501-2026.
Assignee: NPL CAPITAL, LLC  at  228 PARK AVE S, #28282, NEW YORK, NY  10003-1502.

Executed By: ROBERT R. RUTTY  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PEOPLE'S CHOICE HOME LOAN, INC., ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 09/29/2008 Recorded: 10/31/2008 In Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2006000806183 in Queens County , State of New York.

District/Section/Block/Lot: –13030-11

Property Address: 217-03 137TH ROAD, SPRINGFIELD GARDENS, NY 11413

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $134,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS NOMINEE FOR PEOPLE'S CHOICE HOME LOAN, INC., ITS SUCCESSORS AND ASSIGNS
On 3/11/16
By: _____
_____ (Print Name)   Title: _____

STATE OF Colorado
COUNTY OF Douglas

On 3/11/16  before me, Charlotte Benedict , a Notary Public in and for Douglas County  in the State of Colorado  personally appeared _____  (Print Name)   Title: DVP , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed, signed, sealed, and delivered  the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument, and that such individual(s)(a) made such appearance before the undersigned in the County of Douglas _____, State of Colorado

WITNESS my hand and official seal,

_____
Notary Expires: 2/18/19
State of Colorado  County of Douglas
(This area for notarial seal)

CHARLOTTE BENEDICT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154006970
MY COMMISSION EXPIRES 02/18/2019

# Officers Certificate

NPL CAPITAL, LLC, as (Servicer/Master Servicer) hereby certifies that the document(s) attached and listed below have been reviewed and are accurate.

I hereby certify that this Assignment is necessary and appropriate to enable NPL CAPITAL, LLC to carry out its servicing and administrative duties under the relevant transaction documents on behalf of Specialized Loan Servicing, relating to the following property:

Borrower: ROBERT R. RUTTY

Address: 217-03 137TH ROAD

City/State/Zip: SPRINGFIELD GARDENS, NY 11413

Loan Amount: $134,000.00

Note Date: 09/29/2006

NPL CAPITAL, LLC agrees to defend, indemnify and hold harmless Specialized Loan Servicing, including each officer and director of Specialized Loan Servicing  (each, a "Specialized Loan Servicing"), against any and all losses, claims, damages, liabilities, judgments and any other costs, fees and expenses of any kind or nature whatsoever (including the reasonable fees and expenses of counsel and reasonable fees and expenses of experts), imposed on, incurred by or asserted against Specialized Loan Servicing or any other Specialized Loan Servicing , or their respective successors and assigns, in connection with, arising out of or in any way relating to the execution by Specialized Loan Servicing of the Officers Cert described herein.

I hereby authorize the appropriate party of Specialized Loan Servicing to execute the attached documents in accordance with our request.

NPL CAPITAL, LLC
Lindsay Gordon

# EXHIBIT C

# NYS Department of State

# Division of Corporations

## Entity Information

The information contained in this database is current through July 15, 2016.

Selected Entity Name: PEOPLE'S CHOICE HOME LOAN, INC.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | PEOPLE'S CHOICE HOME LOAN, INC. |
| **DOS ID #:** | 2612518 |
| **Initial DOS Filing Date:** | MARCH 05, 2001 |
| **County:** | ALBANY |
| **Jurisdiction:** | WYOMING |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | SUSPENDED |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
PROCESS ADDRESSEE RESIGNED


, ,

**Chief Executive Officer**

NEIL B KORNSWIET
7515 IRVINE CENTER DR
IRVINE, CALIFORNIA, 92618

**Principal Executive Office**

PEOPLE'S CHOICE HOME LOAN, INC.
7515 IRVINE CENTER DR
IRVINE, CALIFORNIA, 92618

## Registered Agent

REGISTERED AGENT RESIGNED

` `

, ,

This office does not record information regarding
the names and addresses of officers, shareholders
or directors of nonprofessional corporations except
the chief executive officer, if provided, which
would be listed above. Professional corporations
must include the name(s) and address(es) of the
initial officers, directors, and shareholders in the
initial certificate of incorporation, however this
information is not recorded and only available by
viewing the certificate.

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| MAR 21, 2001 | Actual | PEOPLE'S CHOICE HOME LOAN, INC. |
| MAR 05, 2001 | Actual | PEOPLE'S CHOICE HOME LONA, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in
New York State. The entity must use the fictitious name when conducting its activities or business in
New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS
Homepage   |   Contact Us

# EXHIBIT  D

# STATE OF WYOMING ✳ SECRETARY OF STATE
## ED MURRAY
## BUSINESS DIVISION

2020 Carey Avenue, Cheyenne, WY 82002-0020
Phone 307-777-7311 · Fax 307-777-5339
Website: http://soswy.state.wy.us · Email: business@wyo.gov

## Filing Information

 **Please note that this form CANNOT be submitted in place of your Annual Report.**

| Name | **People's Choice Home Loan, Inc.** | | |
|---|---|---|---|
| **Filing ID** | 1999-000352884 | | |
| Type | Profit Corporation | Status | Inactive - Dissolved |

### General Information

| | | | |
|---|---|---|---|
| Old Name | | Sub Status | Archived |
| Fictitious Name | | Standing - Tax | Good |
| | | Standing - RA | Delinquent |
| Sub Type | | Standing - Other | Good |
| Formed in | Wyoming | Filing Date | 12/29/1999 12:00 AM |
| Term of Duration | Perpetual | Delayed Effective Date | |
| | | Inactive Date | 10/24/2008 |

### Share Information

| | | | | | |
|---|---|---|---|---|---|
| Common Shares | 100 | Preferred Shares | | Additional Stock | N |
| Par Value | 0.0000 | Par Value | 0.0000 | | |

### Principal Address

2120 Carey Ave
Cheyenne, WY 82001

### Mailing Address

2120 Carey Ave
Cheyenne, WY 82001

### Registered Agent Address

No Agent
No Office
Cheyenne, WY 82001

### Parties

| Type | Name / Organization / Address |
|---|---|

### Notes

| Date | Recorded By | Note |
|---|---|---|

# Filing Information

⚠ Please note that this form CANNOT be submitted in place of your Annual Report.

| | |
|---|---|
| **Name** | **People's Choice Home Loan, Inc.** |
| **Filing ID** | **1999-000352884** |
| **Type** | Profit Corporation |

Status          Inactive - Dissolved

## Most Recent Annual Report Information

| | | | | | |
|---|---|---|---|---|---|
| Type | Original | | | AR Year | 2007 |
| License Tax | $0.00 | AR Exempt | N | AR ID | 00932188 |
| AR Date | 10/24/2008 2:27 PM | | | | |
| Web Filed | N | | | | |

### Officers / Directors

| Type | Name / Organization / Address |
|---|---|
| Director | Matthew Kvarda |
| President | Matthew Kvarda |
| Secretary | Matthew Kvarda |
| Treasurer | Matthew Kvarda |
| Vice President | Matthew Kvarda |

### Principal Address

2120 Carey Ave
Cheyenne, WY 82001

### Mailing Address

2120 Carey Ave
Cheyenne, WY 82001

## Annual Report History

| Num | Status | Date | Year | Tax |
|---|---|---|---|---|
| 00468249 | Original | 12/01/2000 | 2000 | $50.00 |
| 00502255 | Original | 10/30/2001 | 2001 | $50.00 |
| 00550451 | Original | 11/04/2002 | 2002 | $50.00 |
| 00594754 | Original | 11/19/2003 | 2003 | $50.00 |
| 00637573 | Original | 11/05/2004 | 2004 | $50.00 |
| 00689752 | Original | 12/02/2005 | 2005 | $50.00 |
| 00742131 | Original | 12/04/2006 | 2006 | $50.00 |
| 00932188 | Original | 10/24/2008 | 2007 | $0.00 |

## Amendment History

| ID | Description | Date |
|---|---|---|
| 2009-000754554 | RA Resignation | 05/07/2009 |

Registered Agent # Changed  From: 0138661  To: No Value
Registered Agent Organization Name Changed  From: Registered Agency Services, Inc.  To: No Agent
Registered Agent Physical Address 1 Changed  From: 2120 Carey Ave  To: No Office

# Filing Information

 **Please note that this form CANNOT be submitted in place of your Annual Report.**

| Name | **People's Choice Home Loan, Inc.** | | |
|---|---|---|---|
| **Filing ID** | **1999-000352884** | | |
| Type | Profit Corporation | Status | Inactive - Dissolved |

| | | | |
|---|---|---|---|
| | Registered Agent Physical City Changed From: Cheyenne To: No Value | | |
| | Registered Agent Physical Postal Code Changed From: 82001 To: No Value | | |
| 2008-000701918 | Articles of Dissolution | | 10/24/2008 |
| | Filing Status Changed From: Active To: Inactive - Dissolved | | |
| | Filing Sub Status Changed From: Current To: Archived | | |
| | Inactive Date Changed From: No value To: 10/24/2008 | | |
| 2008-000701913 | Reinstatement - Tax | | 10/24/2008 |
| | Filing Status Changed From: Inactive - Administratively Dissolved (Tax) To: Active | | |
| | Inactive Date Changed From: 06/04/2008 To: No value | | |
| 2008-000681358 | Administrative Dissolution (Tax) | | 06/04/2008 |
| | Filing Status Changed From: Active To: Inactive - Administratively Dissolved (Tax) | | |
| 2007-000646810 | Delinquency Notice - Tax | | 12/02/2007 |
| | Common Amendment | | 01/10/2005 |
| | RA Address Change | | 01/07/2005 |
| | Merger - Survivor | | 12/28/2004 |
| | Common Amendment | | 12/31/2001 |
| See Filing ID | Initial Filing | | 12/29/1999 |

# EXHIBIT  E



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2016052700119003002EF7DC

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 2 |
|---|---|

Document ID: **2016052700119003**    Document Date: **03-28-2016**    Preparation Date: **06-13-2016**
Document Type:  **ASSIGNMENT, MORTGAGE**
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| REDVISION (PICK UP)<br>16 COURT STREET SUITE 714<br>PARTNERS (200237-Q)<br>BROOKLYN, NY 11241<br>347-296-0070<br>KAVITA.JURAKAN@REDVISION.COM | NPL CATITAL, LLC<br>P.O. BOX 458<br>KIMBERLING CITY, MO 65686 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 13030 | 11 | Entire Lot | | 217-03 137TH  ROAD |

Property Type:  DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN:   2006000606163

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| NPL CAPITAL, LLC<br>228 PARK AVE S,#28282<br>NEW YORK, NY 10003 | GUSTAVIA HOME, LLC<br>104 SE 8TH AVE<br>FORT LAUDERDALE, FL 33301 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          06-13-2016 17:00
City Register File No.(CRFN):
                                    2016000199369

*Annette M Hill*
*City Register Official Signature*

Recording Requested By:
RICHMOND MONROE GROUP

When Recorded Return To:

NPL CAPITAL, LLC
P.O. BOX 458
KIMBERLING CITY, MO 65686

## CORPORATE ASSIGNMENT OF MORTGAGE

Queens, New York   REFERENCE #: 9004178-B   "RUTTY"
INVESTOR #:
Assignment Prepared on: March 28th, 2016.

Assignor: NPL CAPITAL, LLC, at 228 Park Ave S. #28282, New York, NY  10003.
Assignee: GUSTAVIA HOME, LLC  at  104 SE 8TH AVE, FORT LAUDERDALE, FL  33301.

Executed By: ROBERT R. RUTTY  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE
FOR PEOPLE'S CHOICE HOME LOAN, INC., ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 09/29/2006 Recorded:  10/31/2006  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.:
2006000606183 in Queens County , State of New York.

- Assigned Wholly by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PEOPLE'S
CHOICE HOME LOAN, INC., ITS SUCCESSORS AND ASSIGNS  TO NPL CAPITAL, LLC  Dated: 03/11/2016
Document to be recorded concurrently herewith

District/Section/Block/Lot: -13030-11

Property Address:  217-03 137TH ROAD, SPRINGFIELD GARDENS, NY  11413

     This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

     KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having
an original principal sum of $134,000.00 with interest, secured thereby, together with all moneys now owing or that
may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants
and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the
Assignor's interest under the Mortgage.

     TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee forever, subject
to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the
day and year first above written:

NPL CAPITAL, LLC.
On March 28th, 2016

By: _____
Ashley Warren, Assistant Vice-President

STATE OF MISSOURI
COUNTY OF STONE

On March 28th, 2016, before me, TONI EUTSLER, a Notary Public in and for STONE in the State of MISSOURI,
personally appeared Ashley Warren, Assistant Vice-President, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and
acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the
instrument the person, or the entity upon behalf of which the person acted, executed the instrument, and that such
individual(s) made such appearance before the undersigned in the County of STONE, State of MISSOURI

WITNESS my hand and official seal,

_____
TONI EUTSLER
Notary Expires: 02/24/2018 #14933852
Stone, Missouri
(This area for notarial seal)

TONI EUTSLER
My Commission Expires
February 24, 2018
Stone County
Commission #14933852

*XAO*XAOANMRC*10/09/2016 09 50 06 AM* AMRCIWAMRCA0000000000000006M36* NYQUEEN* 9004178-B NYSTATE_MORT_ASSIGN_ASSN *WSA*AW1AMRC*

# EXHIBIT F

# BALLOON NOTE
### (Fixed Rate)

Loan Number 

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| 09/29/2006 | SPRINGFIELD | NY |
|---|---|---|
| [Date] | [City] | [State] |

**217-03 137TH ROAD, SPRINGFIELD GARDENS, NEW YORK 11413**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 134,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is People's Choice Home Loan, Inc.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 11.550 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1st day of each month beginning on November 1st, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on October 1, 2021, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at P.O. Box 52678, Irvine, CA 92619 or at a different place if required by the Note Holder.

**(B) AMOUNT OF MY INITIAL MONTHLY PAYMENTS**
My monthly payment will be in the amount of U.S. $1,332.11 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only before it is due is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments then due under this Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                     _____ (Seal)
ROBERT R. RUTTY          -Borrower                                                    -Borrower

_____ (Seal)                     _____ (Seal)
                         -Borrower                                                    -Borrower

_____ (Seal)                     _____ (Seal)
                         -Borrower                                                    -Borrower

_____ (Seal)                     _____ (Seal)
                         -Borrower                                                    -Borrower

[Sign Original Only]

PAY TO THE ORDER OF
**RESIDENTIAL FUNDING COMPANY, LLC**
WITHOUT RECOURSE
PEOPLE'S CHOICE HOME LOAN, INC.
A Wyoming Corporation

By_____
DANA LANTRY
Title:   Asst. Vice President

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC

By   *Judy Faber*
Judy Faber, Vice President

GMAC# 
COL #:

## ALLONGE

This endorsement is a permanent part of the Note in the amount of $ 134,000

BORROWER:  ROBERT R RUTTY
PROPERTY:    217-03 137TH ROAD  SPRINGFIELD GARDENS  NY  11413

PAY TO THE ORDER OF:
RESIDENTIAL FUNDING COMPANY, LLC

WITHOUT RECOURSE
Ocwen Loan Servicing, LLC  U.S. Bank National Association, as Trustee for Residential Asset Securities
Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS1

*Karen Smith*
Signor: KAREN SMITH
Title: AUTHORIZED OFFICER

PAY TO THE ORDER OF:
SUMMIT CAPITAL PARTNERS LLC

WITHOUT RECOURSE
RESIDENTIAL FUNDING COMPANY, LLC

*Karen Smith*
Signor: KAREN SMITH
Title: AUTHORIZED OFFICER



## ALLONGE TO THE NOTE

**LOAN** ███████
**Previous Loan #:**
**Borrower:** ROBERT R. RUTTY
**Date of Note:** 09/29/2006
**Loan Amount:** $134,000.00
**Property Address:** 217-03 137TH ROAD, SPRINGFIELD GARDENS, NY  11413

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: NPL CAPITAL, LLC , Without any recourse, representation or warranty, express or implied

### SUMMIT CAPITAL PARTNERS LLC

Signature: _Th Ch_____

Printed Name: _Thomas L Gennis_____

Title: _Managing Member_____

## ALLONGE TO THE NOTE

**LOAN #:** ███████

**Previous Loan #:**

**Borrower:** ROBERT R. RUTTY

**Date of Note:** 09/29/2006

**Loan Amount:** $134,000.00

**Property Address:** 217-03 137TH ROAD, SPRINGFIELD GARDENS, NY  11413

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: GUSTAVIA HOME, LLC , Without any recourse, representation or warranty, express or implied

**NPL CAPITAL, LLC.**

Signature: _____

Printed Name:  Kayla VanWinsen

Title:  Assistant Vice-President

# EXHIBIT  G

4/17/08 11:14:40
BK 2,886 PG 145
DESOTO COUNTY, MS
W.E. DAVIS, CH CLERK



Prepared by:
PAM INGALLS
7515 IRVINE CENTER DR. IRVINE, CA
92618

Record & Return To:
Docx, LLC
1111 Alderman Dr., Ste. 350
Alpharetta, GA 30005

EMCA A015

0009712647   EMC Loan #   589 0009712647EMC ASGN 1

# ASSIGNMENT OF DEED OF TRUST

FOR VALUABLE CONSIDERATION, the receipt of which is acknowledged, the undersigned does hereby sell, transfer and assign unto ~~Mortgage Electronic Registration Systems, Inc.~~ *EMC MORTGAGE CORP.*
~~2780 Lake Vista Drive~~ *909 HIDDEN RIDGE SUITE 200*
~~Lewisville, Texas 75067~~ *IRVING, TX 75039*,
(hereafter referred to as "Assignee"), that certain Deed of Trust, relating to the property legally described as
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT 'A'**
**(A.P.N. #: 2059320100000800)**
executed by **MOSES STREET, JR. AND JEANETTE T. STREET, HUSBAND AND WIFE**

to **Craig N. Landrum**

Trustee,
for the benefit of **PEOPLE'S CHOICE HOME LOAN, INC.**                                     dated
**02/18/2004**                          , securing a note in the sum of **$146,000.00**          , recorded
in Book      **1942**                          , Page      **271**                , of the Office of the Chancery
Clerk of ~~MARSHALL~~ *DeSoto*                          , County, Mississippi, together with the indebtedness
secured thereby. Recorded March 10, 2004.

The UNDERSIGNED as Beneficiary warrants that it is the legal owner of the above described indebtedness and is capable of conveying title to same.

TO HAVE AND TO HOLD the same unto the said Assignee, their successors and assigns, together with all the interest in and to said real estate thereby conveyed and the balance due on the notes thereby secured to its own use and benefit forever.

IN WITNESS THEREOF the undersigned has executed this assignment through its
on this the      *24th*   day of   *February* ,   *2004* .

PEOPLE'S CHOICE HOME LOAN, INC., a
WYOMING CORPORATION

By: _____

Its: _____

**Dana Lantry**
**Asst. Vice President**

State of ~~Mississippi~~ *California*
County of *Orange*

Personally appeared before me, the undersigned authority in and for the said county and state, on this
*24th* day of   *February* ,   *2004*                , within my jurisdiction, the within named

who acknowledged that he/she is **Dana Lantry**
**Asst Vice President**               **People's Choice Home Loan, Inc.**

of
a                                                      *Wyoming* corporation. and that for and on behalf of the

BK 2,886 PG 146

Land situated in DeSoto County Mississippi to wit:

Lot 8,  Stonewall  Farms Subdivision,  located in Section 32,  Township 2 South, Range 5 West, DeSoto County, Mississippi, and more particularly described in plat of said subdivision recorded in Plat Book 14,  Pages 1 & 2,  in the office of the Chancery Clerk of DeSoto County Mississippi, containing 3.00 acres of land.

Being the same property conveyed to grantor,  Moses Street Jr., and wife Jeanette T.  Street, herein by Warranty Deed of record at Book Number 269,  Page 529, dated April 8,  1994,  filed April 19,  1994,  in the Chancery Clerk's Office of DeSoto County Mississippi.

*Corrective: Rerecord with correct county.

STATE OF MS
COUNTY OF MARSHALL
FILED & RECORDED
2007 NOV -2 PM 1:44
BOOK No. PAGE 424-425
C.W. "CHUCK" THOMAS
CHANCERY CLERK

# EXHIBIT  H

JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                              Tuesday, November 20, 2012

## Former Executive at Florida-Based Lender Processing Services Inc. Admits Role in Mortgage-Related Document Fraud Scheme

### Over 1 Million Documents Prepared and Filed with Forged and False Signatures, Fraudulent Notarizations

WASHINGTON – A former executive of Lender Processing Services Inc. (LPS) – a publicly traded company based in Jacksonville, Fla. – pleaded guilty today, admitting her participation in a six-year scheme to prepare and file more than 1 million fraudulently signed and notarized mortgage-related documents with property recorders' offices throughout the United States.

The guilty plea of Lorraine Brown, 56, of Alpharetta, Ga., was announced by Assistant Attorney General Lanny A. Breuer of the Justice Department's Criminal Division; U.S. Attorney for the Middle District of Florida Robert E. O'Neill; and Michael Steinbach, Special Agent in Charge of the FBI's Jacksonville Field Office.

The plea, to conspiracy to commit mail and wire fraud, was entered before U.S. Magistrate Judge Monte C. Richardson in Jacksonville federal court.  Brown faces a maximum potential penalty of five years in prison and a $250,000 fine, or twice the gross gain or loss from the crime.  The date for sentencing has not yet been set.

"Lorraine Brown participated in a scheme to fabricate mortgage-related documents at the height of the financial crisis," said Assistant Attorney General Breuer.  "She was responsible for more than a million fraudulent documents entering the system, directing company employees to forge and falsify documents relied on by property recorders, title insurers and others.  Appropriately, she now faces the prospect of prison time."

"Homeownership is a huge step for American citizens," said U.S. Attorney O'Neill.  "The process itself is often intimidating and lengthy.  Consumers rely heavily on the integrity and due diligence of those serving as representatives throughout this process to secure their investments.  When the integrity of this process is compromised, illegally, public confidence is eroded.  We must work to assure the public that their investments are sound, worthy, and protected."

Special Agent in Charge Steinbach stated, "Our country is increasingly faced with more pervasive and sophisticated fraud schemes that have the potential to disrupt entire markets and the economy as a whole.  The FBI, with our partners, is committed to addressing these schemes.  As these schemes continue to evolve and become more sophisticated, so too will we."

Brown was the chief executive of DocX LLC, which was involved in the preparation and recordation of

Case 1:16-cv-02823-RMG-VMS   Document 31   Filed 10/13/16   Page 59 of 60 PageID #: 435

mortgage-related documents throughout the country since the 1990s. DocX was acquired by an LPS predecessor company, and was part of LPS's business when LPS was formed as a stand-alone company in 2008. At that time, DocX was rebranded as "LPS Document Solutions, a Division of LPS." Brown was the president and senior managing director of LPS Document Solutions, which constituted DocX's operations.

DocX's main clients were residential mortgage servicers, which typically undertake certain actions for the owners of mortgage-backed promissory notes. Servicers hired DocX to, among other things, assist in creating and executing mortgage-related documents filed with recorders' offices. Only specific personnel at DocX were authorized by the clients to sign the documents.

According to plea documents filed today, employees of DocX, at the direction of Brown and others, began forging and falsifying signatures on the mortgage-related documents that they had been hired to prepare and file with property recorders' offices. Unbeknownst to the clients, Brown directed the authorized signers to allow other DocX employees, who were not authorized signers, to sign the mortgage-related documents and have them notarized as if actually executed by the authorized DocX employee.

Also according to plea documents, Brown implemented these signing practices at DocX to enable DocX and Brown to generate greater profit. Specifically, DocX was able to create, execute and file larger volumes of documents using these signing and notarization practices. To further increase profits, DocX also hired temporary workers to sign as authorized signers. These temporary employees worked for much lower costs and without the quality control represented by Brown to DocX's clients. Some of these temporary workers were able to sign thousands of mortgage-related instruments a day. Between 2003 and 2009, DocX generated approximately $60 million in gross revenue.

After these documents were falsely signed and fraudulently notarized, Brown authorized DocX employees to file and record them with local county property records offices across the country. Many of these documents – particularly mortgage assignments, lost note affidavits and lost assignment affidavits – were later relied upon in court proceedings, including property foreclosures and federal bankruptcy actions. Brown admitted she understood that property recorders, courts, title insurers and homeowners relied upon the documents as genuine.

Brown also admitted that she and others also took various steps to conceal their actions from clients, LPS corporate headquarters, law enforcement authorities and others. These actions included testing new employees to ensure they could mimic signatures, lying to LPS internal audit personnel during reviews of the operation in 2009, making false exculpatory statements after being confronted by LPS corporate officials about the acts and lying to the FBI during its investigation. LPS closed DocX in early 2010.

This case is being prosecuted by Trial Attorney Ryan Rohlfsen and Assistant Chief Glenn S. Leon of the Criminal Division's Fraud Section and Assistant U.S. Attorney Mark B. Devereaux of the U.S. Attorney's Office for the Middle District of Florida. This case is being investigated by the FBI, with assistance from the state of Florida's Department of Financial Services.

Today's conviction is part of efforts underway by President Obama's Financial Fraud Enforcement Task Force (FFETF), which was created in November 2009 to wage an aggressive, coordinated and proactive effort to investigate and prosecute financial crimes. With more than 20 federal agencies, 94 U.S. attorneys' offices and state and local partners, it's the broadest coalition of law enforcement, investigatory and regulatory agencies ever assembled to combat fraud. Since its formation, the task force has made great strides in facilitating increased investigation and prosecution of financial crimes; enhancing coordination and cooperation among federal, state and local authorities; addressing discrimination in the lending and financial markets and conducting outreach to the public, victims, financial institutions and other organizations. Over the past three fiscal years, the Justice Department has filed more than 10,000 financial

fraud cases against nearly 15,000 defendants, including more than 2,700 mortgage fraud defendants. For more information on the task force, visit www.stopfraud.gov.

12-1400                                                              Criminal Division

**Topic:**                                                   *Updated September 15, 2014*

StopFraud